UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America,

       v.                                               Crim. No. 2:04-CR-150

Jeffrey Sanders,

       Defendant.

## REPORT AND RECOMMENDATION
(Doc. 132)

Defendant Jeffrey Sanders was convicted in this Court of one count of mail fraud, *see* 18 U.S.C. § 1341, and one count of money laundering, *see* 18 U.S.C. § 1957, on November 8, 2006, following his guilty plea to those offenses. (Docs. 109 at 1; 133-4 at 1.) Presently before the Court is his Motion For Relief From Final Judgment, filed February 17, 2009. (Doc. 132.) In his motion, he argues that the Court erred in its criminal history category determination under the United States Sentencing Guidelines. Specifically, Sanders contends that the Court incorrectly assigned him two criminal history points for prior offenses, which, he argues, resulted in a sentence longer than that which he should have received. For the reasons set forth below, I recommend that Sanders' motion be DENIED.

## Background

**A.     Offense Conduct**

In October of 2000, Sanders and his wife incorporated a mortgage brokerage company known as A Plus Mortgage, Inc.  (Docs. 133 at 1; 70 at 1.)   Sanders was the president of A Plus, and he and his family members brokered mortgages for individuals in the St. Albans area.  *Id.*  In the course of his business, Sanders received funds from clients in connection with residential mortgage loans without disclosing them as required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, and corresponding regulations.  (Doc. 70 at 2.)  Such improperly received funds are known as "taking money outside of closing."  *Id.*  Sanders regularly took funds from client borrowers in this manner, among other misdeeds.  (Docs. 133 at 2; 133-1 at 1.)

**B.     Proceedings in the District Court**

On November 4, 2004, the government filed a forty-eight count indictment, charging Sanders and co-defendants Jeanette Sanders and Kevin Sanders with several counts of mail fraud and money laundering.  (Doc. 1.)   The indictment included language relevant to sentence enhancements for Jeffrey Sanders, specifically, that (1) the alleged loss amount was at least $400,000; (2) Sanders derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense; and (3) he was an organizer and leader of a criminal activity that involved five or more participants and was otherwise extensive.  *See* U.S.S.G. §§ 2B1.1(b), (b)(12)(A), 3B1.1(a); (Doc. 1 at 17).  A second superseding indictment, clarifying some language and dates of offenses,

was returned by the grand jury in May 2006.  (Doc. 70.)  Trial by jury began in July 2006.

Two days into trial, Sanders pleaded guilty before Chief United States District Court Judge William K. Sessions III to one count of money laundering and one count of mail fraud pursuant to a written plea agreement.  (Docs. 133-2; 86 at 1.)  The plea agreement provided that, in exchange for Sanders' guilty plea, the government agreed to move to dismiss the remaining counts.  (Doc. 86 at 3.)  The government further agreed to permit Sanders thirty additional days to "get out of any participation in the mortgage business," and, that, thereafter, Sanders would no longer have "any involvement in the mortgage business in any fashion whatsoever."  *Id.*

Chief Judge Sessions accepted Sanders' plea and ordered the preparation of a presentence report (PSR).  The PSR concluded that Sanders faced an advisory sentencing guideline range of 97 to 120 months, based upon his criminal history category of II and an adjusted total offense level of 29.  (PSR ¶¶ 57, 89.)  The PSR noted that Sanders sustained one criminal history point for a 1999 driving while intoxicated conviction and one additional criminal history point for a felony driving with a suspended license conviction.  It also included findings that Sanders obstructed justice and that he had a supervisory role over his co-defendants in the scheme.  (PSR ¶¶ 41, 42, 51.)  Sanders, through counsel, objected to these and other conclusions in the PSR.

Subsequently, the parties filed a negotiated sentencing agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) on November 8, 2006.  (Doc. 105 at 2.)

3

Under the agreement, the government agreed not to support the PSR's finding that Sanders obstructed justice.  It further agreed not to support the PSR's finding of a four-level enhancement for Sanders' supervisory role in the offense.  (*Id.* at 1-2.)  In exchange, Sanders agreed not to move for downward departures from the sentencing guidelines, and "not to challenge the guideline findings and calculations, including . . . criminal history determinations."  (*Id.*)  The resulting sentencing guideline under the agreement was a criminal history category of II and an adjusted total offense level of 25, yielding a sentencing range of 63-78 months.

As noted above, the calculation of Sanders' criminal history category in both the sentencing agreement and the PSR was based, in part, upon the two criminal history points for Sanders' prior convictions.  *See* U.S.S.G. § 4A1.1(c) (2006).  One point was assigned for his 1999 conviction for driving while intoxicated.  A second point was assigned for his 1999 conviction for driving with a suspended license.  (Doc. 132 at 2.)  The two criminal history points resulted in Sanders being assigned a criminal history category of II.  *See* U.S.S.G. § 5A.  Category II, when coupled with his offense level of 25, yielded an advisory range of 63-78 months under the Sentencing Guidelines.

At Sanders' sentencing, Chief Judge Sessions adopted the conclusions set forth in the sentencing agreement.  (Doc. 138 at 31.)  Counsel for Sanders argued for a downward adjustment from this advisory range pursuant to 18 U.S.C. § 3553(a), asserting that Sanders' criminal history category was overstated.  Defense counsel based his claim in part on an argument that Sanders' driving with a suspended license conviction was

4

countable under § 4A1.2 of the Sentencing Guidelines as a felony offense only because the statutory penalty for the offense under Vermont law was up to two years.  (Doc. 138 at 20-21.)  Chief Judge Sessions declined to adjust the sentence, concluding that the sentence was justified by the factors set forth in 18 U.S.C. § 3553(a).  (Doc. 138 at 31-32.)  The Court ultimately sentenced Sanders to sixty-six months to be followed by a three year term of supervised release, together with an order of restitution of $642,211.07.  (Doc. 109 at 3-5.)  Although Sanders was advised of his right to appeal, (Doc. 138 at 35-36) he did not do so.

Presently a federal inmate, Sanders filed the instant *pro se* "Motion For Relief From Final Judgment Pursuant to Federal Rule[ ]of Civil Procedure[ ] 60(b)(4)" on February 17, 2009.  (Doc. 132.)  In his motion, he argues that the Court erred in application of United States Sentencing Guidelines when it assigned him two criminal history points.  The alleged error, he argues, resulted in a longer sentence than that which should have been imposed.  (Doc. 132 at 5.)

On August 13, 2010, this Court issued an Order directing Sanders to either withdraw his motion or consent to re-characterization of the motion as one for habeas corpus relief pursuant to 28 U.S.C. § 2255.  (Doc. 135 at 3.)  Sanders consented to re-characterization.  (Doc. 136.)

**Discussion**

A person in custody under a sentence of a federal court may seek to vacate that conviction under 28 U.S.C. § 2255(a) if (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) if the Court was without jurisdiction to impose such a sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.   Despite the broad language of § 2255(a), motions that allege violations of federal law are only cognizable if they involve a "fundamental defect which inherently results in a complete miscarriage of justice."   *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).   Sanders cannot meet this standard.   The Court should further conclude that Sanders' motion is barred by the statute of limitations.   Finally, Sanders' failure to pursue a direct appeal results in his claim being procedurally defaulted.

**A.     Timeliness**

Section 2255(f) imposes a one-year statute of limitations upon motions under the statute.   Specifically, it provides in relevant part that "[a] 1-year period of limitation shall apply to a motion under this section," which shall run from the latest of

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme

Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Sanders does not allege any facts which implicate paragraphs (2), (3), or (4).  Accordingly, the Court reviews Sanders' motion pursuant to paragraph (1) only.

Although 28 U.S.C. § 2255(f)(1) does not define "judgment of conviction," the term generally includes both the adjudication of guilt and the imposition of sentence. Fed. R. Crim. P. 32(k); *Deal v. United States*, 508 U.S. 129, 132 (1993).  If a defendant appeals from a conviction or sentence, the judgment is affirmed and the defendant does not petition for certiorari, the judgment becomes "final" when the time for seeking Supreme Court review expires, that is, ninety days after entry of the judgment of the court of appeals.  *Clay v. United States*, 537 U.S. 522, 524-25 (2003).  If the defendant does not file a timely appeal, the Court infers that the one-year period for a motion under § 2255 begins to run on the date upon which the time for filing the appeal expired.  *See id;* Fed. R. App. P. 4(b)(1)(A).

The record in this case shows that, following the Court's acceptance of Sanders' guilty plea, Sanders' judgment and sentence was imposed November 8, 2006.  (Doc. 133-4 at 1.)  Sanders had the opportunity to file a notice of appeal within fourteen days after November 8, 2006, but failed to do so.  *See* Fed. R. App. P. 4(b)(1)(A).  Because he did not file a timely appeal of either his conviction or sentence, Sanders' one-year period

for a motion under § 2255 began to run on November 23, 2006, and accordingly, expired in November 2007. Consequently, Sanders' motion, filed February 17, 2009 (Doc. 132), is barred by the statute of limitations. *See* 28 U.S.C. § 2255(f)(1).

In rare and exceptional circumstances, a court may toll the one-year limitations period set forth based upon equitable considerations. *Holland v. United States*, 130 S.Ct. 2549, 2560 (2010); *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003). In order to merit equitable tolling, the petitioner would have to show reasonable diligence during the time he wishes to have tolled, and that extraordinary circumstances beyond his control prevented successful filing during that time. *Holland*, 130 S.Ct. at 2562. Sanders, however, does not argue that any such circumstances apply here, nor does he offer an explanation as to why he waited more than two years to dispute the Court's application of sentencing guidelines. In fact, as part of his sentencing agreement with the government, Sanders agreed that his criminal history category was II and he agreed to not challenge this determination. The sentencing agreement yielded a sentencing recommendation that was quite beneficial to him and he entered into this agreement with benefit of effective assistance of counsel. Thus, I see no reason why the one-year statute of limitations in § 2255(f) should be equitably tolled in this case.

**B.      Failure to Pursue Direct Appeal**

Even if the Court were to conclude that Sanders' motion is timely, his claim cannot succeed because he failed to pursue any direct appeal. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Basle v.*

*United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley,* 512 U.S. 339, 354 (1994) (internal quotations omitted)); *see also United States v. Munoz,* 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal."). Accordingly, the general rule is that a claim not raised on direct appeal is procedurally defaulted and may not provide the basis for § 2255 relief absent a demonstration of cause and prejudice or actual innocence. *See Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). "'[Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis omitted). The challenge to his criminal history category calculation that Sanders now raises was raised at sentencing before Chief Judge Sessions as a proffered basis for a downward adjustment under 18 U.S.C. § 3553(a). Sanders' failure to pursue this claim on appeal is not due to any external reason.

The record reveals that Sanders failed to pursue a direct appeal of either his conviction or his sentence. He raises no claim of actual innocence, nor does he demonstrate cause and prejudice. In fact, he does not provide any reason for why he failed to pursue a direct appeal, despite being informed of his right to do so. (Doc. 138 at 35-36.) Accordingly, his claims are procedurally defaulted.

**C.    Sanders' Claim on the Merits**

In any event, even if the Court were to permit Sanders' motion despite its untimeliness and its procedural default, his argument still fails. As described above, Sanders disputes his assignment of two criminal history points. Initially, it should be

noted that Sanders does not challenge the fact that he was indeed convicted of the underlying offenses. He only challenges the manner in which they were accounted for under the Sentencing Guidelines. The first point, sustained for the conviction for driving while intoxicated, was, in fact correctly assigned. The United States Sentencing Guidelines section entitled "Definitions and Instructions for Computing Criminal History" provides that "sentences for misdemeanor and petty offenses are counted," subject to certain exceptions. U.S.S.G. § 4A1.2(c). In particular, hitchhiking, juvenile status offenses and truancy, loitering, minor traffic infractions (e.g. speeding), public intoxication and vagrancy "are never counted." U.S.S.G. § 4A1.2(c)(2). None of the exceptions listed pertain to the offense of driving while intoxicated. Moreover, the application notes corresponding to this section unequivocally provide that, while certain "minor traffic infractions" are excluded from a defendant's criminal history calculation, "[c]onvictions for driving while intoxicated . . . are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." U.S.S.G. § 4A1.2 cmt. n.5; *United States v. Loeb*, 45 F.3d 719, 722 (2d Cir. 1995).

The second criminal history point, sustained for Sanders' 1999 conviction for driving with a suspended license, was also correctly assigned. Under U.S.S.G. § 4A1.2(c), "sentences for all felony offenses are counted" for the purposes of computing criminal history. A "felony offense" is defined under the sentencing guidelines as "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed." U.S.S.G. § 4A1.2(o). As the PSR

correctly notes, driving with a suspended license in Vermont is punishable by up to two years in prison, and is therefore a felony offense. 23 V.S.A. § 674(a)(1). Accordingly, Sanders was properly assigned one criminal history point for his offenses, and there was no fundamental defect inherently resulting in a complete miscarriage of justice.

## Conclusion

For the reasons stated above, I recommend that Sanders' motion under 28 U.S.C. § 2255 be DENIED.

Dated at Burlington, in the District of Vermont, this 19th day of October, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).